RECEIVED
USDC. CLERK, CHARLESTON, SC

2009 FEB 18  A 10: 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joshua Cramer, #251406, | ) | C. A. No. 0:08-1589-PMD-RSC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden, Broad River Correctional Institution, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

This habeas corpus petition under 28 U.S.C. § 2254 brought by a state prisoner represented by counsel is before the undersigned United States Magistrate Judge for a report and recommendation on the respondent's motion for summary judgment filed on August 11, 2008. 28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

The Petitioner, Joshua Cramer, is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for York County. The petitioner was indicted at the April 23, 1998, term of the grand jury for York for murder and possession of a firearm during the commission of a violent crime (98-GS-46-1015); a second count of murder and possession of a firearm during the commission of a violent crime (98-GS-46-1016); distribution of marijuana (98-GS-46-1017); and arson, third degree (98-GS-46-1018). He was also charged at the June 18, 1998, term with accessory before the fact of murder (98-GS-46-2192). He was represented by Thomas A. McKinney, Esquire.

On July 28, 1998, the Applicant waived presentment on the accessory charge and pled guilty to all charges. App. p. 63-111. He was sentenced by the Honorable John C. Hayes, III, to confinement for a period of life without parole for murder (98-GS-46-1015); consecutive life without parole for murder (98-GS-46-1016); concurrent life without parole for accessory before the fact of murder (98-GS-46-2192); ten (10) years concurrent for arson, third degree (98-GS-46-1018); and five (5) years concurrent for distribution of marijuana (98-GS-46-1017). The petitioner did not appeal his conviction or sentence.

The petitioner filed an application for PCR on July 12, 1999, through counsel Gaston Fairey. App. p. 20-25. In the application, he alleged:

> 1. The Applicant was denied effective assistance of trial counsel - counsel advised the Applicant and his parents that he could argue for a sentence of thirty years rather than life without parole, but no request was made at sentencing;
>
> 2. The South Carolina Legislature exceeded its constitutional authority when it amended S.C. Code § 16-3-20 to provide for a sentence of life imprisonment without possibility of parole. The sentence imposed upon applicant for the murder and accessory to murder convictions is therefore unconstitutional. The sentence does not comply with Article XII, Section 2 of the South Carolina Constitution.

App. p. 22-23. The Respondent made its Return on September 13, 1999. App. p. 27-31. On March 9, 2005, the Petitioner, now through counsel Tara D. Shurling made an amended application with

the following allegations:

> 1. The Trial Court lacked subject matter jurisdiction to enter judgment against the Applicant where the indictment for murder was fatally defective in that it failed to state the time and place of the death of the victim. <u>Winns v. State</u>, (2003 WL 23279854 (S.C.Com.Pl.)).
>
> 2. The Applicant alleges that he received ineffective assistance of counsel in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 14, of the South Carolina Constitution prior to and during his guilty plea proceeding. Specifically, he would allege the following:
>
>> a. Trial counsel was ineffective for failing to adequately investigate and explore the possibility of raising the affirmative defense of self-defense to two of the murder charges involved in his case where the killings occurred while the Applicant was defending himself against a robbery.
>>
>> b. Trial counsel was ineffective in that he failed to adequately investigate and exploit available testimony which would have supported the Applicant's claim of self-defense.
>>
>> c. Trial counsel violated the Applicant's right to privileged communication with his attorney by disclosing matters clearly within the boundaries of the attorney-client privilege to the prosecution without the Applicant's permission prior to the Applicant's statement to the authorities.
>>
>> d. Trial counsel provided the Applicant ineffective assistance of counsel in the manner in which he drafted his client's statement to be provided to the police. The statement, as written, failed to fully present the Applicant's version of the facts in this case and presented the Applicant as a cold-blooded, calculated killer by virtue of these important omissions and the manner in which the facts were presented by counsel.

  e. Trial counsel provided his client ineffective assistance of counsel where he failed to explain to his client the possibility that he might receive a thirty (30) year sentence for murder under certain circumstances if he proceeded to trial by jury.

  f. Trial counsel was ineffective for advising his client that the only possible outcomes in his case were either life without parole or the death penalty where, under certain factual circumstances, it would have been possible for the Circuit Court to have imposed a sentence fo somewhere between thirty (30) years and life for these offenses.

  g. Trial counsel was ineffective for counseling his client that if he was found guilty of multiple counts of murder he would receive the death penalty where our Supreme Court has held it is inappropriate to assume a jury will find a statutory aggravating circumstance. See, <u>State v. Starnes</u>, 340 S.C. 312, 531 S.E.2d 907 (S.Ct. 2000).

  h. Trial counsel was ineffective in counseling the Applicant to plead guilty under the terms of a negotiated plea bargain to avoid the death penalty without first counseling his client concerning the frequency with which capital punishment is imposed in South Carolina, the rarity with which it has been imposed in York County specifically, and the statistical rarity of a defendant receiving the death penalty for a crime committed when he was but eighteen years of age.

App. p. 31-33. An evidentiary hearing was convened at the Moss Justice Center in York County that same day before the Honorable Lee A. Alford, Circuit Court Judge. App. p. 173-315. The petitioner was present and represented by Ms. Shurling. The Respondent was represented by Julie Thames of the Office of the Attorney General. Testimony was taken from Thomas McKinney, the

4

petitioner, Christopher Lee Cramer, Eileen Cramer, Leonard Bradley and Solicitor Tommy Pope.

On August 18, 2005, Judge Alford entered an Order of Dismissal with prejudice. App. p. 6-19. Next, current counsel John D. Elliott on Petitioner's behalf made a Rule 59 motion. App. p. 35-38, 44-45, 57-61. The Respondent opposed the motion. App. p. 46-50, 52-53. Judge Alford entered an order on November 1, 2005, denying the Rule 59 motions. App. p. 1-4.

The Petitioner noticed an appeal to the South Carolina Supreme Court from the denial of relief on November 29, 2005. On April 10, 2006, counsel John Elliott made a petition for writ of certiorari raising the following questions presented:

> I. Whether the counsel was ineffective in failing to recognize that the applicant had available the complete defense of self-defense, and in developing that defense for the benefit of the applicant, so as to adequately advise the applicant of his defenses and alternatives to entering a plea of guilt.
>
> II. Whether the PCR court erred in finding the applicant's post-trial motion and submission of an expert's affidavit was untimely, because the motion and submission were within the applicable period of filing.
>
> III. Whether the PCR court should have considered the submission of additional evidence consisting of the report of the psychologist, to either grant a new trial or reopen the proceedings for the complete development of the record for the applicant.
>
> IV. Whether the General Assembly violated the single subject clause of the S.C. Constitution when it included in its "truth in sentencing"

>      legislation wholly unrelated provisions, rendering
>      the Act unconstitutional in its entirety, and
>      trial counsel was ineffective in failing to raise
>      the issue.

Petition, p. I. The respondent, through Assistant Attorney General Julie Thames made a Return on June 7, 2006. On February 14, 2008, the South Carolina Court of Appeals entered an Order denying the petition for Writ of Certiorari. A timely petition for rehearing was made. On April 11, 2008, the Court of Appeals denied the petition for rehearing. On May 16, 2008, the remittitur was entered. This action was filed on April 14, 2008.

The following materials have been made part of the record here:

1. Petition for Writ of Certiorari.
2. Return to Petition for Writ of Certiorari.
3. Order Denying Certiorari.
4. Order Denying Rehearing.
5. Remittitur Letter.
6. PCR Appendix (316 pages).

### **GROUNDS FOR RELIEF PRESENTED**

In his petition for Writ of Habeas Corpus under 28 U.S.C.§ 2254, the petitioner makes the following allegations:

I. Counsel was ineffective in failing:

   a) to recognize that the petitioner had available the complete defense of self-defense, and

   b) in developing that defense for the benefit

6

>of the Petitioner, so as to adequately advise the applicant of his defenses and alternatives to entering a plea of guilt.

On August 11, 2008, the petitioner was provided a copy of the respondent's motion for summary judgment, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). After several extensions of time to respond, the petitioner filed a response to the motion on December 1, 2008. Hence it appears consideration of the motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2008. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

>(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Supreme Court expounded upon this language in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the majority with respect to this matter, Justice O'Connor stated that a state court's decision can be contrary to the Supreme Court's precedent in two ways: first, "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law. Second, a state-court decision is also contrary to the Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. <u>Id</u>. at 1519.

Justice O'Connor further stated that "[t]he text of § 2254(d)(1) ... suggests that the state court's decision must be substantially different from the relevant precedent of the Court." <u>Id</u>. She added that a "state-court decision will also be contrary to the Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court precedent." <u>Id</u>. at

1519-20. Even if "the federal court considering the prisoner's habeas application might reach a different result applying" relevant Supreme Court precedent, so long as the state court applied the correct legal rule from Supreme Court cases, such a "run-of-the-mill" state court decision could not be deemed "contrary to" Supreme Court precedent. Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that a state court decision involves an unreasonable application of the Court's precedent if "the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of the Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also

be unreasonable." Id. at 1522. In making the "unreasonable application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b).

**INEFFECTIVE ASSISTANCE CONCERNING GUILTY PLEA AND SELF-DEFENSE**

To prove constitutionally ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. Id. at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In the context of a guilty plea, Petitioner also must establish prejudice by proving that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The petitioner must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." Id.; see, Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) (if there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error in failing to disclose or pursue it cannot be prejudicial); Bell v. Evatt, 72 F.3d 421 (4th

11

Cir. 1995) (decision to recommend a guilty by reason of mental impairment plea was reasonable given overwhelming evidence and desire to reduce possible sentencing outcomes).

While this is a large burden for a petitioner to carry, it is even higher for a petitioner proceeding under the AEDPA. That is, a petitioner must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance. Additionally, he must show that the state court applied Strickland to the facts of his case in an "objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

## **DISCUSSION**

A review of the record and relevant case law reveals that petition should be denied.

As an initial matter, all Petitioner's grounds for relief have been properly exhausted in the state court.

Here, the state PCR court reasonably applied the precedent of Strickland v. Washington and Hill v. Lockhart in denying post conviction relief in this matter. Specifically, the state court held:

> The Applicant alleged that trial counsel was ineffective in failing to consider the issue of self-defense on the theory that one of the victims who ripped him off of one pound of marijuana might have had a gun. The Applicant alleged that trial counsel advised the Applicant that self-defense was not an available defense because he thought the vehicle in which the Applicant shot two of the

12

victims had four doors instead of two. Trial counsel testified that he was made aware that it was a two-door car instead of a four-door but that fact did not make a difference on the issue of self- defense. The Applicant shot the victims in the head. One victim was shot in the back of the head when he said, "don't be threatening me." The second victim, also in the car, was then shot in the head while he was pleading, "this is me, this is me." The death of the third victim was plotted by the Applicant to cover up the other murders and the Applicant tried to shoot him but his gun was out of bullets. Two friends of the Applicant killed this third victim for the Applicant. The Applicant and his friends were plotting to kill the fourth person to complete the cover-up, but were arrested before they could complete the plan.
  The Applicant presented as Exhibit # 10 a copy of a police report that a woman had reported a gun stolen from her home by someone who might be known as Tyrone (one of the victims) on September 6, 1997. She reported on September 15, 1997, that the gun had been returned by the suspect and that she did not wish to press charges. This Court finds that this happened months before the killings in this case and there is no evidence that the Applicant was aware of it. It could not, therefore, be used to establish self-defense.
The written statement of a close friend of the Applicant, together with the other evidence in the case, supports the belief and advice given to the Applicant and his family that it would be unlikely that they could prove the elements of self-defense to a jury. This Court finds this allegation to be without merit. . .
. . .This Court finds that trial counsel bargained with the State in an effort to convince them not to seek the death penalty, but that he never gave the State any information they could use against the Applicant until a plea agreement had been reached. Even then, the plea agreement, in Paragraph 5, provides that no incriminating evidence given by the Applicant could be used against him in the event he withdrew his guilty plea. This Court finds this allegation to be without merit.
  This Court finds from a review of the record that the benchmark in <u>Strickland v. Washington</u>,

> supra, has not been contravened and that when deferential judicial scrutiny is applied, the conduct of trial counsel fell within the wide range of reasonable professional assistance.

App. p. 16-17.

It appears that the PCR court correctly found that trial counsel was not ineffective in deciding to pursue a plea agreement rather than facing the death penalty at trial where the suggested evidence of the affirmative defense of self-defense was unlikely to bring an acquittal inasmuch as the petitioner had admitted to counsel he was not in fear or threatened at the time of the incident. The petitioner faced overwhelming evidence of guilt, including his own confession, and a conviction was likely after a jury trial. After numerous consultation with the petitioner and his family, counsel decided that his goal had to be saving his client's life. During the guilty plea proceedings, counsel stated that he had "considered all possible defenses in the case; and I find none. I have considered self-defense. I have considered voluntary manslaughter.. ." App. p. 98, l. 13-20. Statements by counsel made in open court during a plea carry a "strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, at 74 (1977).

The state PCR court determined that counsel's testimony was "highly credible." App. p. 14. Petitioner asserts that the PCR court's conclusions about counsel's testimony were "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2)

(2000). Nonetheless, for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be clear. See, id. § 2254(e)(1) (protecting state courts' factual judgments unless disproved in federal court by "clear and convincing evidence"). Indeed, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); accord, Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008).

The PCR court determined that the statements of the petitioner and his admissions to counsel prior to the plea agreement did not support the petitioner's belief that he was in danger of losing his life or suffering serious bodily injury. App. p. 16. Trial counsel testified that the petitioner initially claimed that he had no involvement in the killings but later changed his story and confessed. (App. p. 196, lines 9-15). According to trial counsel, the petitioner initially said the driver threatened him saying, "I will f--- you up", but the petitioner then recanted that version stating it was a lie and that the driver did not make any such statement. The petitioner admitted that he was angry because they had "ripped him off in this drug deal." (App. p. 199, lines 2-14). The petitioner shot the victims in the head. One victim was shot in the back of the

head when he said, "don't be threatening me." (App. p. 219, lines 2-5). The second victim, also in the car, was then shot in the head while he was pleading, "this is me, this is me." The death of the third victim was plotted by the petitioner to cover up the other murders, and the petitioner tried to shoot him but his gun was out of bullets. Two friends of the petitioner killed this third victim for the petitioner. The petitioner and his friends were plotting to kill the fourth person to complete the cover-up, but were arrested before they could complete the plan. (App. p. 135-139).

Additionally, the PCR judge determined that there was no factual support that the petitioner had reason to believe that the victims were armed. App. p. 17. These findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(e), and simply have not been overcome with clear and convincing evidence.

In short, trial counsel articulated valid strategic reasons for negotiating a plea agreement rather than attempting to construct a strategy based on self-defense. Trial counsel's goal was to save the petitioner's life. The decision to plead guilty was made after numerous consultations with the petitioner and his parents. The petitioner has not shown that counsel was deficient in that choice of tactics.

The PCR judge's decision was not contrary to, nor involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States, and it was not a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The respondent's motion should be granted.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the respondents' motion for summary judgment be granted, and this matter ended.

                            Respectfully Submitted,

                            Robert S. Carr
                            United States Magistrate Judge

Charleston, South Carolina

February __, 2009

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).