# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joshua Kerr Cramer, #251406, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No.: 0:08-CV-1589-PMD-RSC |
| v. ) | |
| ) | |
| Warden, Broad River Correctional ) | **ORDER** |
| Institute; ) | |
| ) | |
| Respondent. ) | |
| _____) | |

This matter is before the court upon Petitioner Joshua Cramer's ("Petitioner") Objections to a United States Magistrate Judge's Report and Recommendation ("R&R") that Respondent's Motion for Summary Judgment be granted and that Petitioner's section 2254 petition be dismissed. Having reviewed the entire record, including Petitioner's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## BACKGROUND

In his Objections, Petitioner provided the factual setting that led up to Petitioner's incarceration and agreed with the R&R's procedural history.

### I. Facts

On the night of March 2, 1998, four men came to Petitioner's house to buy marijuana from him. The four men were Greg Sims, Ryan Sims, Tyrone Anthony, and Marcus Hinton. Because Hinton's Honda coup was too small to carry five people, Greg Sims stayed at Petitioner's house while the rest of the men drove to a deserted area to complete the drug sale.

Petitioner took a 9-mm. handgun with him. When they arrived at the deserted area, Ryan Sims asked to see the marijuana. When Petitioner gave him the bag of marijuana, Sims got out of the car and took off running. At this point, the remaining three men decided to return to Petitioner's house to pick up Greg Sims and search for Ryan Sims, who stole the marijuana. Marcus Hinton, the driver, and Tyrone Anthony rode in the front seats of the car, while Petitioner and Greg Sims sat in the back seats. At some point, Hinton stopped the car, and he and Anthony got out, went to the trunk, and then returned to their front seats. At this point, Petitioner stated he didn't know what was going on and was ready to fire his gun off. Hinton responded, "Don't be threatening me." Petitioner shot Hinton in the back of the head and then shot Anthony in the head, killing them both.

Petitioner put both of the dead bodies in the trunk of the car and, still accompanied by Greg Sims, drove to Kimball Lee's house. Petitioner told Lee what happened, and the two of them devised a plan to kill Greg Sims, the remaining witness, and to burn the car with the dead bodies in it. They contacted another friend, Murray Adkins, for help. With Lee following in another car, Petitioner drove the Honda coup with Greg Sims as his passenger. After picking up Adkins, the four men drove to a deserted location to ignite the Honda. Petitioner and Greg Sims managed to ignite the Honda coup, and while Greg Sims watched the car become engulfed in flames, Petitioner attempted to shoot him from behind. For whatever reason, the gun did not fire, and Greg Sims did not know Petitioner attempted to kill him.

All four of the men returned to Petitioner's house. Outside of Greg Sims' presence, Adkins asked Petitioner for a gun, but Petitioner did not have one to give him. With this, the three men left Petitioner at his home. About an hour later, Petitioner rode his bicycle back to the scene of the shootings to retrieve his pager. He had a message on his pager telling him to check

2

his voicemail. The voicemail was from Adkins, which stated, "I took care of that for you," meaning he had killed Greg Sims. The next day, Petitioner heard from Ryan Sims, who informed Petitioner that he wanted to return the marijuana. Petitioner and Lee talked about the need to kill Ryan Sims since he was the only remaining witness. Lee, Adkins, and Petitioner met on the night of March 3. Adkins and Lee described the killing of Greg Sims, and with Lee's help, Petitioner threw the handgun and clip into a lake at a local housing development. Shortly thereafter, Petitioner was arrested by the police and, ultimately, charged with the homicides.

## II.     Procedural History

Petitioner is presently confined in the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for York County. Petitioner was indicted for murder and possession of a firearm during the commission of a violent crime (98-GS-46-1015); a second count of murder and possession of a firearm during the commission of a violent crime (98-GS-46-1016); distribution of marijuana (98-GS-46-1017); and arson, third degree (98-GS-46-1018). Petitioner was also charged at the June 18, 1998 term with accessory before the fact of murder (98-GS-46-2192). Petitioner was represented by Thomas A. McKinney, and on July 28, 1998, Petitioner waived presentment on the accessory charge and pled guilty to all charges. He was sentenced by the Honorable John C. Hayes, III, to confinement for a period of life without parole for murder (98-GS-46-1015); consecutive life without parole for accessory before the fact of murder (98-GS-46-2192); ten years concurrent for arson, third degree (98-GS-46-1018); and five years concurrent for distribution of marijuana (98-GS-46-1017). Petitioner did not appeal his conviction or sentence.

Petitioner filed an application for post-conviction relief on July 12, 1999, through his counsel Gaston Fairey. In the application, Petitioner alleged:

1) The Applicant was denied effective assistance of trial counsel—counsel advised the Applicant and his parents that he could argue for a sentence of thirty years rather than life without parole, but no request was made at sentencing;

2) The South Carolina Legislature exceeded its constitutional authority when it amended S.C. Code §16-3-20 to provide for a sentence of life imprisonment without possibility of parole. The sentence imposed upon applicant for the murder and accessory to murder convictions is therefore unconstitutional. The sentence does not comply with Article XII, Section 2 of the South Carolina Constitution.

(*See* R. at 22–23.) Respondent made its Return on September 13, 1999. It appears that nothing happened with Petitioner's application until March 9, 2005, when Petitioner, through his counsel Tara D. Shurling, filed an amended application for post-conviction relief. The amended application stated the following allegations:

1) The Trial Court lacked subject matter jurisdiction to enter judgment against the Applicant where the indictment for murder was fatally defective in that it failed to state the time and place of the death of the victim. Winns v. State, (2003 WL 23279854 (S.C.Com.Pl.).

2) The Applicant alleges that he received ineffective assistance of counsel in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 14, of the South Carolina Constitution prior to and during his guilty plea proceeding. Specifically, he would allege the following:

   a. Trial counsel was ineffective for failing to adequately investigate and explore the possibility of raising the affirmative defense of self-defense to two of the murder charges involved in his case where the killings occurred while the Applicant was defending himself against a robbery.

   b. Trial counsel was ineffective in that he failed to adequately investigate and exploit available testimony which would have supported the Applicant's claim of self-defense.

   c. Trial counsel violated the Applicant's right to privileged communication with his attorney by disclosing matters clearly within the boundaries of the attorney-client privilege to the prosecution without the Applicant's permission prior to the Applicant's statement to the authorities.

   d. Trial counsel provided the Applicant ineffective assistance of counsel in the manner in which he drafted his client's statement to be provided to the police. The statement, as written, failed to fully present the Applicant's

4

> version of the facts in this case and presented the Applicant as a cold-blooded, calculated killer by virtue of these important omissions and the manner in which the facts were presented by counsel.
>
> e. Trial counsel provided his client ineffective assistance of counsel where he failed to explain to his client the possibility that he might receive a thirty (30) year sentence for murder under certain circumstances if he proceeding to trial by jury.
>
> f. Trial counsel was ineffective for advising his client that the only possible outcomes in his case were either life without parole or the death penalty where, under certain factual circumstances, it would have been possible for the Circuit Court to have imposed a sentence for somewhere between thirty (30) years and life for these offenses.
>
> g. Trial counsel was ineffective for counseling his client that if he was found guilty of multiple counts of murder he would receive the death penalty where our Supreme Court has held it is inappropriate to assume a jury will find a statutory aggravating circumstance. See, <u>State v. Starness</u>, 340 S.C. 312, 531 S.E.2d 907 (S.Ct. 2000).
>
> h. Trial counsel was ineffective in counseling the Applicant to plead guilty under the terms of a negotiated plea bargain to avoid the death penalty without first counseling his client concerning the frequency with which capital punishment is imposed in South Carolina, the rarity with which it has been imposed in York County specifically, and the statistical rarity of a defendant receiving the death penalty for a crime committed when he was but eighteen years of age.

(R. at 31–33.) An evidentiary hearing was convened at the Moss Justice Center in York County that same day before the Honorable Lee A. Alford. (R. at 173–315.) Petitioner was present at the hearing and represented by Ms. Shurling. On August 18, 2005, Judge Alford entered an Order of Dismissal with prejudice. (R. at 6–19.) Subsequently, Petitioner, through his current counsel John D. Elliot, filed a rule 59 motion. Judge Alford entered an order on November 1, 2005 denying Petitioner's Rule 59 motion. (R. at 1–4.)

Petitioner noticed an appeal to the South Carolina Supreme Court from the denial of relief on November 29, 2005. On April 10, 2006, Petitioner, through his counsel Mr. Elliot, filed a petition for a writ of certiorari, raising the following questions:

5

1) Whether counsel was ineffective in failing to recognize that the applicant had available the complete defense of self-defense, and in developing that defense for the benefit of the applicant, so as to adequately advise the applicant of his defenses and alternatives to entering a plea of guilt.

2) Whether the PCR court erred in finding the applicant's post-trial motion and submission of an expert's affidavit was untimely, because the motion and submission were within the applicable period of filing.

3) Whether the PCR court should have considered the submission of additional evidence consisting of the report of the psychologist, to either grant a new trial or reopen the proceedings for the complete development of the record for the applicant.

4) Whether the General Assembly violated the single subject clause of the S.C. Constitution when it included in its "truth in sentencing" legislation wholly unrelated provisions, rendering the Act unconstitutional in its entirety, and trial counsel was ineffective in failing to raise the issue.

On February 14, 2008, the South Carolina Court of Appeals denied the petition for writ of certiorari. Petitioner filed a petition for a rehearing, which the South Carolina Court of Appeals denied on April 11, 2008. On May 16, 2008, the Remittitur was entered.

Petitioner filed his federal habeas petition on April 14, 2008, which asserted the following grounds for relief:

> Counsel was ineffective in failing to recognize that the petitioner had available the complete defense of self-defense, and in developing that defense for the benefit of the petitioner, so as to adequately advise the applicant of his defenses and alternatives to entering a plea of guilt.

Respondent moved for Summary Judgment on August 11, 2008. The Magistrate Judge recommended that the court grant Respondent's Motion for Summary Judgment and dismiss Petitioner's section 2254 petition.

## STANDARD OF REVIEW

### I. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

## II.     Magistrate Judge's R&R

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.*

## DISCUSSION OF PETITIONER'S OBJECTIONS

As an initial matter, the Magistrate Judge found that Petitioner properly exhausted his grounds for federal habeas relief in state court, and after a review of the record, the court agrees. The Magistrate Judge then recommended that the court grant Respondent's Motion for Summary Judgment. The Magistrate Judge concluded that "the PCR court correctly found that trial counsel was not ineffective in deciding to pursue a plea agreement rather than have Petitioner face the

death penalty at trial where the suggested evidence of the affirmative defense of self-defense was unlikely to bring an acquittal." (R&R at 14.) Petitioner objects to this recommendation, arguing that the evidence of Petitioner's guilt was not as "overwhelming" as the Magistrate Judge and PCR judge concluded because Petitioner "had available the complete defense of self-defense," and Petitioner received ineffective assistance of counsel when his attorney "overlooked [this] defense available to [Petitioner], did not explore it as a result, and did not advise [Petitioner] of the alternative such to give him the option of going to trial." (Objections at 3, 8.)

Two standards control the court's evaluation of Petitioner's ineffective assistance of counsel claim. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). *Strickland v. Washington* states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Washington*, 466 U.S. at 687–96. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A

"reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner has the burden of showing that trial counsel was ineffective under this standard. *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

Having identified the governing Supreme Court law, the court must also give deference to the state court's adjudications made pursuant to that law, as required by 28 U.S.C. § 2254(d). The court may grant habeas relief with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision unreasonably applies clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The PCR court made the following analysis to conclude that Petitioner failed to satisfy the *Strickland* standard to show that his counsel provided ineffective assistance:

> The Applicant alleged that trial counsel was ineffective in failing to consider the issue of self-defense on the theory that one of the victims who ripped him off of one pound of marijuana might have had a gun. The Applicant alleged that trial counsel advised the Applicant that self-defense was not an available defense because he thought the vehicle in which the Applicant shot two of the victims had four doors instead of two. Trial counsel testified that he was made aware that it

9

was a two-door car instead of a four-door but that fact did not make a difference on the issue of self-defense. The Applicant shot the victims in the head. One victim was shot in the back of the head when he said, "don't be bothering me." The second victim, also in the car, was then shot in the head while he was pleading, "this is me, this is me." The death of the third victim was plotted by the Applicant to cover up the other murders and the Applicant tried to shoot him but his gun was out of bullets. Two friends of the Applicant killed this third victim for the Applicant. The Applicant and his friends were plotting to kill the fourth person to complete the cover-up, but were arrested before they could complete the plan.

The Applicant presented as Exhibit #10 a copy of a police report that a woman had reported a gun stolen from her home by someone who might be known as Tyrone (one of the victims) on September 6, 1997. She reported on September 15, 1997, that the gun had been returned by the suspect and that she did not wish to press charges. This Court finds that this happened months before the killing in this case and there is no evidence that the Applicant was aware of it. It could not, therefore, be used to establish self-defense. The written statement of a close friend of the Applicant, together with the other evidence in the case, supports the belief and advice given to the Applicant and his family that it would be unlikely that they could prove the elements of self-defense to a jury. This court finds this allegation to be without merit. . . .

This Court finds that trial counsel bargained with the State in an effort to convince them not to seek the death penalty, but that he never gave the State any information that they could use against the Applicant until a plea agreement had been reached. Even then, the plea agreement, in Paragraph 5, provided that no incriminating evidence given by the Applicant could be used against him in the event he withdrew his guilty plea. This court finds this allegation to be without merit.

This Court finds from a review of the record that the benchmark in Strickland v. Washington, supra, has not been contravened and that when deferential judicial scrutiny is applied, the conduct of trial counsel fell within the wide range of reasonable professional assistance.

(R. at 16–18.)

### I. Petitioner Argues Sufficient Evidence Existed for Him to Assert a Self-Defense Claim

Petitioner first objects to the Magistrate Judge's conclusion that the record included "overwhelming" evidence of Petitioner's guilt, including Petitioner's confession and the paucity of any evidence supporting a self-defense claim. (Objections at 3.) Petitioner believes the evidence indicates that he did act in self-defense, and therefore, the PCR Judge's and Magistrate

10

Judge's conclusions about Petitioner's trial counsel's testimony that self-defense was not a reasonably viable claim were "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). To disprove a state court's factual judgments in federal court, Petitioner must do so through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Under South Carolina law, self-defense requires that a defendant show (1) he was without fault in bringing on the difficulty; (2) he was in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and (4) he had no other probable means of avoiding the danger. *State v. Bryant*, 336 S.C. 340, 344–45, 520 S.E.2d 319, 321–22 (1999).

To show that evidence existed to satisfy the first element of a self-defense claim—that he was without fault in bringing on the difficulty—Petitioner asserts that he "had been effectively kidnapped by the young men who set out to rob him;" he "was the victim of a strong-arm robbery;" and he "did not ask to be robbed or kidnapped." With regard to the kidnapping claim, kidnapping occurs when one unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away any other person by any means whatsoever without authority of law. S.C. Code Ann. § 16-3-910 (1985). A kidnapping commences when one is wrongfully deprived of his freedom and continues until freedom is restored. *State v. Kornahrens*, 290 S.C. 281, 287, 350 S.E.2d 180, 184 (1986) (citation omitted). Petitioner provided no analysis to reach the conclusion that he had been kidnapped, and from Petitioner's own recitation of the facts, he voluntarily got

11

into the car with the other men in hopes of selling them marijuana and led them to the deserted location where he ultimately killed them. Furthermore, Petitioner voluntarily got back into the car a second time after all of them had returned to his home to retrieve Greg Sims. Therefore, nothing suggests that Petitioner was kidnapped, and the court finds this assertion meritless.

With regard to the second element of a self-defense claim—that he was in actual, or believed he was in, imminent danger of losing his life or sustaining serious bodily injury—the Magistrate Judge found that Petitioner failed to offer clear and convincing evidence to overcome the presumption of correctness afforded the PCR court's conclusions that "the statements of the Petitioner and his admissions to counsel prior to the plea agreement did not support the Petitioner's belief that he was in danger of losing his life or suffering seriously bodily injury" or "that there was no factual support that the Petitioner had reason to believe that the victims were armed." (R. at 15, 16.) Petitioner objects to these findings and asserts that he was a victim of "a strong-arm robbery." Petitioner bases much of his argument on the theory that, under South Carolina law, he was allowed to act under "appearances." *State v. Starnes*, 340 S.C. 312, 531 S.E.2d 907 (2000) (noting that a defendant is entitled to an appearances charge where the claim of self-defense arises from a mistaken appearance of danger).

In his Objections, Petitioner only refers to two parts of the record to support his argument that he was under the "appearance" of danger. Petitioner points to the fact that the victims got out of the car, went to the trunk, and returned to their front-seats and a treatment note of a Dr. Geoff McKee, who conducted a forensic psychological evaluation of Petitioner to assess his mental status at the time he committed the murders. In his interview with Dr. McKee, Petitioner claims to have been asked by one of the victims if he was "strapped" (carrying a gun), to which

12

Petitioner responded, "Yes." (R. at 59.) Then, according to Petitioner in his Objections,[1] the driver of the vehicle informed him that Ryan Sims, the person that stole Petitioner's bag of marijuana, was carrying a .44 caliber pistol. (*Id.*) This falls short of constituting clear and convincing evidence that the PCR court incorrectly found that Petitioner had no reason to believe the victims were armed. According to this evidence presented by Petitioner, the only person that was suggested as being armed was a person that was no longer in the vehicle with Petitioner. While Ryan Sims "might still [have] been in the area" after he ran from the vehicle with Petitioner's marijuana, as Petitioner hypothesizes, this does not factually support a reasonable belief of imminent danger. Furthermore, nothing indicates that the victims were alleged to have been carrying a deadly weapon or that Petitioner noticed a deadly weapon on the victims' persons, even after they returned from looking into the trunk of the car.

Finally, Petitioner argues that Marcus Hinton, the driver of the vehicle, said to Petitioner, "Don't be threatening me,' in a voice [Petitioner] took to be menacing." This statement occurred, however, after Petitioner had drawn his firearm and threatened the victims; thus, he elicited Hinton's statement through his own conduct. Based on the foregoing, the court finds that Petitioner has not offered clear and convincing evidence to overcome the presumption of correctness afforded the PCR court's conclusion that there was no factual support for Petitioner to assert a self-defense claim. *See* 28 U.S.C. §2254(e)(1).

---

[1] In Dr. McKee's report, Petitioner reported that Marcus Hinton, the driver, had stated that Tyrone Anthony, the front-seat passenger, was carrying his brother's .44 caliber handgun. In his Objections, Petitioner explains that Dr. McKee's report mistakenly referred to Ryan Simms, the person that stole Petitioner's bag of marijuana, as "Tyrone." Although Petitioner has not offered any proof that this constituted a typo, the court must view the evidence in the light most favorable to Petitioner under the summary judgment standard.

## II.  Petitioner Argues His Sixth Amendment Right to Effective Assistance of Counsel was Violated When His Counsel Failed to Pursue a Self-Defense Claim

The Magistrate Judge found that the PCR court properly determined that "trial counsel was not ineffective in deciding to pursue a plea agreement rather than facing the death penalty at trial where the suggested evidence of the affirmative defense of self-defense was unlikely to bring an acquittal inasmuch as the petitioner had admitted to counsel he was not in fear or threatened at the time of the incident." (R&R at 14.) Petitioner objects on the basis that his trial counsel "had as his mission at the outset" to avoid the death penalty, and thus, he never properly considered, or looked into, the possibility of asserting self-defense. (Objections at 6.)

As discussed above, Petitioner must first show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In the context of a guilty plea, Petitioner must also establish prejudice by proving that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Id.* If, however, there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error of failing to disclose or pursue it cannot be prejudicial. *Savino v. Murray*, 82 F.3d 593, 599 (4th 1996) (citing *Hill*, 474 U.S. at 59).

Petitioner objects to the Magistrate Judge's statement that Petitioner "admitted . . . he was angry because [the victims] had 'ripped him off' in his drug deal." Petitioner argues that this statement came only from counsel's testimony at the PCR hearing and cannot be found anywhere in counsel's notes or the confession prepared for the plea agreement. Petitioner's Objections go so far as to state, "it strains credulity to think that, under these circumstances, [Petitioner] got

14

mad about his marijuana being stolen and, on impulse, shot the two young men." (Objections at 7.) Contrary to Petitioner's assertion, even Dr. McKee's treatment notes indicate that Petitioner "recalled 'feeling mad when [he] realized they [the victims] were all involved'" with stealing his marijuana. He further recalled thinking, "I got to do something to neutralize the situation or gain control—I wanted to get out of the car." Thus, the court finds this objection meritless.

Finally, Petitioner argues that counsel's testimony that he considered self-defense as a trail strategy "is simply not credible, and is therefore not entitled to weight," (Objections at 6). Petitioner testified at his PCR hearing, "All that was said about the self-defense was . . . that because I had entered into an agreement to sell the marijuana, that that kind of cancelled out any possibility of that as being a defense." Petitioner further argues that his parents' testimony at the PCR hearing corroborates "[c]ounsel's refusal to consider any claim of self-defense." Petitioner also attempts to show that his trial counsel did not properly consider and investigate a self-defense claim because his trial counsel did not know that the Honda coup in which Petitioner committed the murders was a two-door car, rather than a four-door, until close to trial. (Objections at 6.)

The court disagrees with Petitioner's assertion that his trial counsel's testimony was not credible. First, as discussed above, the PCR Court correctly concluded that the factual record in Petitioner's case lacked sufficient evidence for an attorney to reasonably believe a self-defense claim could have been successfully asserted as an affirmative defense. Petitioner's trial counsel testified at Petitioner's guilty-plea hearing that he "considered all possible defenses in these cases" and "found none." He specifically stated that he "considered self-defense [and] voluntary manslaughter." (R. at 98; lines 14–20.) At the PCR hearing, Petitioner's counsel testified that he "sat down so many times with [Petitioner] and with his parents and went over all of the

15

ramifications of this case, of his confession, of proof against him, self-defense, potential self - -- everything." He also testified that he was made aware that the car had two doors as opposed to four, but "that fact did not make a difference on the issue of self-defense." (R. at 17.) The PCR Court heard all of this testimony and determined that counsel's testimony was "highly credible." (R. at 14.) Petitioner's trial counsel testified that he reached the conclusion that self-defense was not likely a successful claim to assert based on his evaluation of the factual record, and the PCR Court found that Petitioner's trial counsel "had forty years of trial experience and has one of the most complete and well-documented files in this case that the Court has observed." (R. at 14–15.) "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320 , 324 (4th Cir. 2008). Based on the foregoing, the court cannot deem Petitioner's trial counsel's testimony "simply not credible" as Petitioner asserts.

The record indicates that Petitioner's trial counsel considered and evaluated Petitioner's likelihood of success in asserting a self-defense claim. Thus, the court agrees with the PCR Court's determination that Petitioner's trial counsel's performance did not fall below an objective standard of reasonableness or prejudice Petitioner when he sought a plea deal for Petitioner rather than going to trial and having Petitioner face a possible death sentence. *Savino v. Murray*, 82 F.3d 593, 599 (4th 1996) (noting that a petitioner cannot prove ineffective assistance of counsel if there exists no reasonable probability that a possible defense would have succeeded at trial).

## CONCLUSION

For the foregoing reasons, the court agrees with the Magistrate Judge's Report and Recommendation that Respondent's Motion for Summary Judgment be **GRANTED** and that Petitioner Joshua Cramer's Petition be **DISMISSED**.

**AND IT IS SO ORDERED.**


PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 26, 2009**